* WILLIAM C. BUTLER *v.* TOWN OF PUTNEY.

*Soldier's Bounty. Constitutionality of the Bounty Enabling Act. Sufficiency of Consideration.*

The act of 1862, (Gen. Sts., page 118,) authorizing towns to vote bounties to volunteers, is constitutional; and the legislature thereby conferred upon towns the right to vote a bounty to those who had enlisted as well as to those who should thereafter enlist.

It was not necessary that the soldier should have enlisted in view of receiving any bounty in order to be entitled to recover against a town; if he brought himself within the terms and conditions of the offer contained in the vote, it was sufficient.

Having enlisted to the credit of the town and been applied on its quota is a sufficient consideration to support a subsequent promise to pay a bounty embraced in the vote of the town.

ASSUMPSIT to recover a town bounty. Plea, the general issue. The case was tried upon an agreed statement of facts which are fully stated in the opinion of the court.

The county court, at the September term, 1869, BARRETT, J., presiding, rendered judgment, *pro forma*, for the defendants,

*Tried February term, 1870.

under a rule that the plaintiff's damages should be assessed at $108, and interest from July 1st, 1867, with leave to plaintiff to except.

*Charles N. Davenport*, for the plaintiff.

*Waterman & Read*, for the defendants.

The opinion of the court was delivered by

PIERPOINT, C. J.   This was an action of assumpsit for a town bounty.   The plaintiff was a citizen and resident of the defendant town.   He enlisted into the U. S. service to the credit of said town, on the 9th of September, 1861, was mustered on the 19th of November, 1861, and discharged at the close of his term of service on the 18th of November, 1864.   He was credited to and on the town quota of said town as a volunteer, and has never received any bounty from said town.

On the 23d day of July, 1864, the town, at a meeting duly warned, voted to pay volunteer soldiers who have been in service of the United States, and credited in the town quota of Putney, and have not received a bounty from the town, three dollars per month each.   No question is made as to the regularity of this vote, or of the prior proceedings that resulted therein, and it is conceded that the plaintiff is one of the class of persons referred to in said vote, and that his case comes strictly within its terms.

But it is insisted that the town is not bound by that vote to pay the money ; that the vote is in violation of the constitution of this state, and we are referred to the 9th Art. of part I. of the constitution, which is as follows :   " That every member of society hath a right to be protected in the enjoyment of life, liberty, and property, and therefore is bound to contribute his proportion towards the expense of that protection, and yield his personal service when necessary, or an equivalent thereto ; but no part of any person's property can be justly taken from him, or applied to public uses, without his own consent, or that of the representative body of the freemen."

At an early period of the late war, when the several states were being called upon by the general government for soldiers, the in-

habitants of the several towns were very desirous of procuring volunteers to enlist from their respective towns, under the belief that, whatever system or plan for raising the necessary troops should ultimately be adopted, such enlistments would enure to the benefit of their towns, by reducing the number that they in the future would be required to furnish. Some towns voted to raise money by taxation, and the officers of other towns borrowed money to be expended in procuring volunteers, before the legislature had taken action on the subject. But the idea generally prevailed that the towns, as such, by virtue of the general authority conferred upon them by the legislature, had no power to raise money by taxation to pay bounties to volunteers. To obviate this difficulty, the legislature by an act passed in 1862, Gen. Sts., 118, passed what is generally called the enabling act, authorizing the several towns to " grant and vote, such sums of money as they may judge best, to be paid to those persons who have volunteered, or may hereafter volunteer from said town, to serve in the volunteer or militia regiments, or companies of this state, in the service of the United States," &c. This act seems to remove all difficulty, so far as the legislature had the constitutional power to confer the authority. It is conceded that this act is constitutional so far as it authorizes the towns to vote bounties to such volunteers as would enlist, but in conferring the power to vote bounties to those who had enlisted, and were in the service, the legislature exceeded its power under the constitution. The legislature, by the act referred to, intended to give to towns the power over, and the control of, a subject that before the act was not within the authority conferred upon them. It simply gives the towns authority to vote money for a specific purpose, and leaves it to them to say whether they will exercise the power or not.

Suppose the legislature should enact a law declaring that any express promise thereafter made, to pay for services voluntarily rendered, either before or after the act, for the party making the promise, shall be binding upon the promisor, and may be enforced in a court of law, can any one claim that such an act would be unconstitutional? Such an act would go further than the present. In this act, authority to pass the vote is all that is given. The indi-

vidual in the other case had the power to make the promise without the act. The act makes the promise binding. In this case, the town acts within the authority given ; but whether when made it is binding between the town and any individual soldier, depends upon the facts of each individual case.

There can be no question that when the state was called upon to furnish soldiers, the legislature might have voted to raise money by a tax to pay bounties to soldiers, and might have embraced those who had already enlisted, as well as those who should thereafter enlist, and in fact did so substantially, by paying $7 per month in addition to the United States' pay, not only to those who should enlist, but to those *who had enlisted*. The constitutionality of this act we believe has never been questioned.

If the legitlature can raise money for such purposes, there seems to be no good reason why they cannot delegate the same authority to the several towns within their respective limits. In the legislature the people act through their representatives ; in town meeting they act in person, and can then act as understandingly and as intelligently upon a question of this character, which relates exclusively to their own interests as inhabitants of the towns.

It is said further, conceding the act to be constitutional, the town is not liable by reason of that vote, because the plaintiff when he enlisted did not do so in view of receiving any bounty, and did not place himself to the credit of the town for any such purpose. This court has already held that it was not necessary that he should. This was so decided in the case of *Davis* v. *Landgrove*, at the last term in Bennington Co. If the soldier brings himself within the terms and conditions of the offer, so that the town has the benefit of the enlistment to their credit, upon their own terms, that is sufficient.

It is also said that there was no sufficient consideration to support the promise. The case shows that the plaintiff enlisted to the credit of the town, and was applied on the quota of the town, thus reducing the number by one, that the town was subsequently required to furnish ; and while he was thus in the service occupying a place upon the quota of said town that they would otherwise

have been required to fill, a place that he had occupied for years, and the town having the full benefit of his enlistment, the town recognizing their obligation to him, therefore voted to pay him, with others in like situation, the sum of $3 per month. The circumstances of this case we think show a sufficient consideration to sustain the promise. The plaintiff, bringing himself within the exact terms of the vote, is entitled to recover.

Judgment of the county court reversed and judgment for the plaintiff to recover the stipulated sum of $108, with interest from July 1, 1867.